**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
LORENZO BARRENECHEA,                :
                                    :   Civil Action No. 10-1466 (DRD)
            Petitioner,             :
                                    :
        v.                          :       **O P I N I O N**
                                    :
KAREN BALICKI, et al.,              :
                                    :
            Respondents.            :
_____ :

**APPEARANCES**:

Lorenzo Barrenechea, <u>Pro Se</u>
#405040
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Meredith L. Balo, Esq.
Office of the Union County Prosecutor
32 Rahway Avenue
Elizabeth, NJ 07202
Attorney for Respondents

**DEBEVOISE, District Judge**

Petitioner, Lorenzo Barrenechea, submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and Respondents, Karen Balicki and the Attorney General of New Jersey, have submitted an answer to the petition (docket entry 10), with the available state court record.  Petitioner also filed a traverse to the answer (docket entry 12).  For the following reasons, the petition will be denied.

## BACKGROUND

**A.    Factual Background**

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), in Petitioner's direct appeal.[1]  See Respondents' Exhibit ("RE") 3.

> In December 2001, Detective Mooney arrested defendant for possession with intent to distribute cocaine and possession of marijuana. The arrest warrant identified defendant's address as 209 Loomis Street, Elizabeth. At the time of the arrest, however, defendant identified himself as Martin Cruz, living at 158 Park Place. Mooney later learned defendant's true identity and that the car defendant had been driving was registered to a person living at 158 Park Place. Mooney also learned that defendant had outstanding arrest warrants for a parole violation, possession of drugs, and failure to appear in court. Although the parole violation warrant did not identify defendant's address, defendant's parole officer told Mooney that defendant's last known address was on Loomis Street.
>
> About two weeks later, Mooney, accompanied by five additional officers, went to 158 Park Place to execute the arrest warrants. When they arrived, Mooney saw parked in the driveway the vehicle defendant had been driving when Mooney previously arrested him.
>
> The officers knocked and defendant's girlfriend opened the door. The officers asked if she knew where defendant was and displayed his photograph. The girlfriend pointed over her shoulder into the house and the officers followed her to the second floor where

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

> they found defendant asleep in the front bedroom with the girlfriend's young child. The officers arrested defendant and instructed him to get dressed.
>
> When one of the officers searched defendant's pants for weapons, he found approximately $1,000 cash in the pocket. And when the officers walked around the bed, they saw a large bag of cocaine, a scale, cup and a spoon with white powder residue, and smaller plastic bags, all on an open entertainment center. The officers seized the evidence and before departing requested the girlfriend's consent to search the bedroom by telling her they "wouldn't feel safe in letting her children back in the room without checking for drugs and weapons." Mooney read and explained the consent form to the girlfriend and advised her that she did not have to sign the form and that she had a right to refuse consent. After reviewing the form in English and Spanish, defendant's girlfriend signed and gave the officers permission to search the bedroom. In the course of this search, the officers found a loaded Glock semiautomatic, nine-millimeter weapon in a closet protruding underneath some linen on an upper shelf.
>
> Defendant claimed his girlfriend was not involved and that none of the seized items belonged to her. During the search, however, Mooney also found a traffic summons for the girlfriend and upon contacting the police dispatcher found she had an outstanding traffic warrant for failing to appear in court. Mooney therefore arrested the girlfriend and transported her to headquarters along with defendant.
>
> At the station, Mooney learned the dispatcher was mistaken and that the warrant for the girlfriend had been recalled. Accordingly, Mooney released the girlfriend. While being processed, defendant filled out an arrest card reporting 158 Park Place as his residence.

<u>See</u> Respondents' Exhibit 3, <u>State v. Barrenechea</u>, 2006 WL 686778 (N.J. App. Div. Mar. 20, 2006).

3

B.   **Procedural Background**

A Union County Grand Jury returned an indictment charging Petitioner with five counts of various drug and weapons charges, including possession of cocaine, possession with intent to distribute cocaine, and possession of a firearm, all in violation of New Jersey state law.  A second indictment charged Petitioner with second-degree certain persons not to have weapons.

Prior to trial, a motion to suppress was conducted.  Trial was held in the Superior Court of New Jersey, Union County, on January 24, 2003.  A jury found Petitioner guilty of all five counts of the first indictment.  Petitioner then pled guilty to the second indictment.

On April 11, 2003, Petitioner was sentenced to an aggregate term of twenty-five years imprisonment, with a 7-year period of parole ineligibility for the first indictment, and a ten-year sentence with a five-year period of parole ineligibility on the second indictment.

Petitioner appealed.  On March 26, 2006, the Appellate Division affirmed the conviction and remanded for resentencing. On May 25, 2006, the New Jersey Supreme Court denied Petitioner's petition for certification.

On or around October 6, 2006, Petitioner filed a motion for post-conviction relief ("PCR") in the trial court.  Meanwhile, on October 2, 2007, Petitioner was resentenced.  He received the

same sentence after the judge considered certain aggravating factors.

Petitioner's PCR motion was denied by the trial judge on January 22, 2008.  On appeal, the denial of PCR was affirmed on August 20, 2009.  Petitioner filed a petition for certification with the New Jersey Supreme Court, which was denied on December 14, 2009.

Petitioner filed this habeas petition on March 15, 2010. Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and Respondents were ordered to answer.  Respondents filed an answer to the petition and the available state court record on or about September 2, 2010.  On October 12, 2010, Petitioner filed a Traverse/Reply to the Answer.

**C.    Petitioner's Claims**

Petitioner cites four grounds for relief (Petition, ¶ 12).

1.    Ineffective assistance of counsel during pre-trial proceedings (Ground One).
2.    Post-Conviction Relief judge erroneously found counsel effective based on witness credibility, rather than actual fact-finding which was provided by defense witness (Ground Two).
3.    The New Jersey Supreme Court erred by not granting his Petition for certification on direct appeal, in the interest

5

   of justice, in light of the United States Supreme Court

   ruling in <u>Georgia v. Randolph</u> (Ground Three).

4. PCR Court erred by not granting Petitioner's relief in light

   of <u>Georgia v. Randolph</u> (Ground Four).

## **28 U.S.C. § 2254**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester

v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierlev, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

**A. Ineffective Assistance of Counsel Claims (Grounds One and Two).**

Petitioner argues in Ground 1 that:

Counsel was ineffective on pretrial level during the suppression hearing, by his unwillingness to call a crucial defense witness who was ready, able and available. The witness in question would have shed light on the events which transpired and would have contradicted the testimony render[ed] by the police. Plaintiff strongly believes that this witness testimony would have exonerated him and proving beyond a shadow of a doubt that the search, subsequent seizure of evidence and arrest was obtained unlawfully [due] to an illegal entry. Also, the said witness was coerced into signing the consent form. Since counsel failed to present the said witness, the judge was left to only rely on the testimony of the police officer, which resulted in the Plaintiff's suppression motion being denied.

(Pet., ¶12A).  Likewise, in Ground Two, Petitioner argues that the PCR judge erred in denying his ineffective assistance of counsel claim in ruling on the PCR motion.  Petitioner states:

> Plaintiff's post-conviction attorney presented witness, affidavit and testimony, which demonstrated that counsel was ineffective by not calling a reliable witness, which was at the heart of the suppression hearing.  The said witness flew in from Florida and testified that she had contacted Plaintiff's then counsel and explained to him in detail that she was willing to testify that the police entered her residence illegally and coerced her into sign[ing] a consent form with threats and intimidation.  The judge in this instant matter denied Plaintiff's PCR, because he did not adhere to the facts and felt that the witness was not credible, which is a question for a jury.

(Pet., ¶ 12B).  The record reveals that the potential witness was Adriana Alvarez, Petitioner's girlfriend.  Petitioner argues that Alvarez would testify that she was coerced into signing a consent form, rendering the search and seizure illegal due to the police officer's illegal entry into the home.  Alvarez testified at the evidentiary hearing on the PCR motion that she would gladly have testified at the suppression hearing, and that she tried to get in touch with Petitioner's attorney but he would not return her calls.  (RE 22- Transcript of PCR Motion).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can

9

deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  See id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture,

>  and some will have had an isolated, trivial effect.
>  Moreover, a verdict or conclusion only weakly supported
>  by the record is more likely to have been affected by
>  errors than one with overwhelming record support.
>  Taking the unaffected findings as a given, and taking
>  due account of the effect of the errors on the
>  remaining findings, a court making the prejudice
>  inquiry must ask if the defendant has met the burden of
>  showing that the decision reached would reasonably
>  likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In this case, the PCR judge conducted a limited evidentiary hearing on December 7, 2007. After hearing from witnesses and the attorneys, the PCR judge noted that Petitioner's trial attorney was credible when he testified that he had spoken to Petitioner and they decided not to present Alvarez as a witness because they determined she would not be credible or helpful. (RE 22, at pp. 65-66). Then, the PCR judge found that Petitioner and Alvarez's testimony at the evidentiary hearing was not credible, and "without a witness who was available, without a witness who was going to be used, well, there's no change in this particular case." (RE 22 at p. 66).

11

The Appellate Division reviewed the PCR judge's decision and examined Petitioner's ineffective assistance of counsel claims on appeal of his PCR motion.  The Appellate Division first fully laid out the case law concerning ineffective assistance of counsel, citing <u>Strickland</u> and <u>State v. Fritz</u>, 105 N.J. 42 (1987).  Then, the Appellate Division held:

> When the trial judge has made specific factual findings, those findings are entitled to substantial deference on appeal.  We do not review the record from the point of view of how we would decide the matter were we the original factfinder.  Rather, we are obliged to "give deference to those findings of the trial judge which are substantially influenced by [the judge's] opportunity to hear and see the witness and to have the 'feel' of the case, which a reviewing court cannot enjoy."  Thus, our scope of review of a trial judge's findings of fact is extremely narrow.  So long as the judge's findings of fact "could reasonably have been reached on sufficient credible evidence present in the record," they are binding on appeal.
>
> Viewed in this light, defendant's attack on the judge's findings of fact is meritless.  Contrary to defendant's claims on appeal, the judge did not selectively focus on some facts while ignoring others.  The record demonstrates that the judge conducted a thorough and comprehensive review of the evidentiary record before him.  In particular, the judge's oral opinion was not limited to Alvarez's failure to appear in court to testify at defendant's trial until apprehended by sheriff's officers, but also addressed her willingness to execute a PCR affidavit on defendant's behalf and testify at his PCR hearing.  Thus, the judge did not ignore Alvarez's cooperative attitude at the PCR stage.  Instead, the judge discussed that testimony, but expressly rejected her claim that she would have appeared at the suppression hearing if requested to do so by defense counsel.  The judge stated that he did not believe Alvarez's claim that she contacted trial counsel twenty times and received no response.  Thus, defendant's contention that the judge ignored the testimony that supported his

> position is meritless.  The judge addressed that testimony by finding neither Alvarez nor defendant credible.
>
> Unlike the trial judge, who had the benefit of hearing, seeing and observing the testimony of trial counsel, Alvarez and defendant, we have nothing other than the cold record to guide us.  It is for that reason that the Court has held that appellate judges must defer to a trial judge's findings of fact, especially where those findings include detailed credibility determinations.
>
> We have been presented with no meritorious basis upon which to reject the PCR judge's conclusion that trial counsel met with Alvarez and concluded she would make a poor witness.  Under those circumstances, we will not second-guess the strategy decision trial counsel made when he decided to rely exclusively on cross-examination of Mooney, rather than also call Alvarez, to establish that her consent was coerced.  Merely because such strategy was not successful does not render counsel's performance defective.

State v. Barrenechea, 2009 WL 2525457 (N.J. App. Div. Aug. 20, 2009) at **3-4)(internal citations omitted)(RE 13).

Upon reviewing the record, this Court notes that defense counsel testified that he chose not to call Alvarez as a witness at the suppression hearing because she did not seem credible and was reluctant to be involved in the case.  Instead, counsel made a decision to show that Alvarez's consent was coerced through cross-examining Detective Mooney.  Defense counsel testified that Petitioner agreed with this reasoning, even though at the PCR hearing, Petitioner denied his agreement.

Based on the foregoing, it appears that any decision regarding Alvarez's potential to testify was based on trial

13

strategy, and did not constitute deficient performance. As the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Petitioner's claims will be denied.

**B.     Petitioner's Fourth Amendment Claims and *Georgia v. Randolph* (Grounds Three and Four).**

Testimony from the motion to suppress, located at Respondents' Exhibit 17, reveals that the police went to Petitioner's residence in order to arrest him on outstanding warrants. They were given authorization to enter the house by Alvarez to effectuate the arrest, and during the arrest, noticed in plain view, the drugs and drug paraphernalia. With Alvarez's consent, they searched a closet and found a handgun.

In Georgia v. Randolph, the United States Supreme Court held that "a physically present inhabitant's express refusal to consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." 547 U.S. 103, 122-23 (2006). In Grounds Three and Four, Petitioner argues that "Mrs.

Alvarez was indeed separated from Plaintiff during the time she was coerced, threatened and intimidated into signing the consent form in order to avoid possible objection." (Pet., ¶ 4C).

Petitioner challenged the consensual nature of the search on direct appeal of his conviction. The Appellate Division held:

> Defendant also argues that because his girlfriend did not voluntarily consent to the search, the gun should have been suppressed. To justify a search on the basis of consent, the State bears the burden of proving that the consent was voluntary and that the consenting party understood his or her right to refuse consent.
>
> Here, the girlfriend did sign the consent form after she was explained its terms in both English and Spanish. The motion judge found that Mooney did not "rush [or] coerce [the girlfriend] in any way." Additionally, the motion judge noted that defendant offered no proof of threats to report the girlfriend to DYFS, and did not find it coercive for Mooney to say that, because defendant had previous offenses involving weapons and drugs, he "wouldn't feel safe letting [the girlfriend's] children back in the room without checking it." These findings are supported by substantial credible evidence in the record.

State v. Barrenechea, 2006 WL 686778 (N.J. App. Div. Mar. 20, 2006) at *4 (internal citations and footnote omitted).

First, this Court agrees with Respondents that Randolph is factually distinguishable from this case. In Randolph, the defendant "unequivocally refused" consent to search the house in the presence of his wife, who then gladly gave consent. See Georgia v. Randolph, 547 U.S. 103, 107 (2006). In this case, Petitioner was not present when consent was given by Alvarez, and Petitioner did not refuse consent.

Furthermore, this Court finds that Petitioner's instant habeas challenge is wholly meritless in light of the United States Supreme Court's decision in State v. Powell, 428 U.S. 465 (1976).  In Powell, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in a unconstitutional search or seizure was introduced at his trial."  Id. at 482-83.  Moreover, the Third Circuit has found that, under this standard, "[t]he question is not whether the trial court 'correctly' decided the fourth amendment issue, but whether the petitioner was given an *opportunity for full and fair* state court litigation of his fourth amendment claim."  Petillo v. State of New Jersey, 562 F.2d 903, 906 (3d Cir. 1977) (emphasis in original) (citations omitted).

Here, Petitioner's Fourth Amendment claim was addressed at his suppression hearing, extensively litigated during his trial, and discussed in the Appellate Division's decision on appeal. Since Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state courts, Petitioner is not entitled to habeas relief.

16

## **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## **CONCLUSION**

For the reasons set forth above, the petition will be denied. An appropriate order follows.

*Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE
United States District Judge

Dated: January 4, 2012

17